UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DOUGLAS HARTMAN and )
LESLIE HARTMAN, )
)
      Plaintiffs, )
)
      vs. )      Case No. 4:18 CV 869 AGF
)
L-3 COMMUNICATIONS EOTECH, Inc., )
and L-3 TECHNOLOGIES, INC., )
)
      Defendants. )

## ORDER AND MEMORANDUM

This matter is before the Court on the motion of Defendants L-3 Communications

EOTech, Inc., and L-3 Technologies, Inc., for judgment on the pleadings.  In the event

the Court does not render judgment on the pleadings in their favor, Defendants have

requested that the Court issue a case management order requiring Plaintiffs to supply

sufficient evidence to make a prima facie case of causation.  For the reasons set forth

below, the motion will be denied.

## BACKGROUND

This is a product liability and personal injury action brought by Plaintiff Douglas

Hartman and his wife, Plaintiff Leslie Hartman. Douglas Hartman is a special agent with

the Federal Bureau of Investigation and former member of the FBI SWAT team.  As

alleged in the petition, Defendant L-3 Communications EOTech, Inc. ("EOTech"),

designs, manufactures, and markets holographic weapon sights.  Defendant L-3

Technologies, Inc., is the parent company of EOTech.  Holographic sights are devices

that are mounted on top of weapons and used by special operations forces, law

enforcement personnel, and others to acquire a target and accurately fire the weapon.

Plaintiffs allege that Defendants became aware of certain defects in the holographic

sights in 2006 and 2007.  Specifically, they contend Defendants knew the sights

experienced defective conditions called "thermal drift" and "parallax error" when

subjected to cold temperatures.  These two conditions are alleged to cause a shooter

looking through the holographic sight to potentially miss a target at which he appeared to

be directly aimed.  Plaintiffs contend Defendants failed to disclose these defects to their

users.

On November 24, 2015, the United States of America filed suit against

Defendants in the U.S. District Court for the Southern District of New York.  The U.S.

Government alleged Defendants knowingly sold defective sights to the military and law

enforcement and unlawfully concealed the known defects.  On November 25, 2015, the

District Court entered a Stipulation and Order of Settlement and Dismissal (the

"Settlement"), wherein Defendants admitted that they knowingly sold defective

holographic sights to the U.S. Government from 2007 through 2014.

According to Plaintiffs' petition, a year before the United States filed suit, Plaintiff

Hartman was shot and injured on November 26, 2014, while performing an operation

with the FBI SWAT team at a residential property in St. Louis County, Missouri.  After

waiting outside for several hours in freezing temperatures, the SWAT team members

entered the residence, each carrying a weapon equipped with a defective EOTech

holographic sight.  The suspect, Major Washington, was concealed in a covered clothes

rack in the home's basement. When Plaintiff Hartman unzipped the rack's covering, Washington opened fire and hit another member of the SWAT team – Agent Ogurek. Agent Ogurek subsequently aimed his defective sight on Washington and returned fire. The bullet, however, missed its intended target and struck Agent Hartman, who suffered serious injuries.

Plaintiffs filed their petition in state court on May 30, 2018, asserting strict liability, negligence, breach of express and implied warranties, and loss of consortium claims. The petition alleges that defects in Agent Ogurek's EOTech sight caused his bullet to miss its mark and instead strike and injure Plaintiff Hartman. Defendants removed the case, invoking this Court's diversity jurisdiction on the basis that the parties are citizens of different states and the amount in controversy exceeds the jurisdictional minimum.

Defendants have moved for judgment on the pleadings with respect to all of Plaintiffs' claims in this lawsuit. In the event that this Court declines to render judgment on the pleadings, Defendants ask the Court to exercise its discretion to issue a case management order requiring Plaintiffs to establish a prima facie case of causation before Defendants are required to conduct discovery. Plaintiffs filed a response opposing Defendants' motion and a separate motion asking the Court for leave to dismiss Count III (breach of express and implied warranties) without prejudice. The Court granted Plaintiffs' motion to dismiss on September 4, 2018.

## ARGUMENTS OF THE PARTIES

In their motion for judgment on the pleadings, Defendants argue that Plaintiffs

have not adequately pleaded facts establishing that the weapon sight used by Agent

Ogurek was defective or caused Plaintiff Hartman's injuries. In addition, with respect to

the element of causation, Defendants argue that the close proximity between Agents

Ogurek and Hartman when the shooting occurred precludes the alleged defects as being

the source of Agent Ogurek's aiming error. Finally, to the extent the Court does not

render judgment on the pleadings, Defendants ask the Court to order Plaintiffs to supply

sufficient evidence to establish a prima facie case of causation before discovery requests

are served on Defendants.

In response, Plaintiffs state that Defendants' motion for judgment on the pleadings

should be denied as the petition contains sufficient facts to state product liability claims.

With regard to Defendants' contention that judgment on the pleadings is warranted given

the distance between Ogurek and Hartman in the basement, Plaintiffs counter that this

argument improperly relies on matters outside the pleadings, speculation and disputed

facts. Plaintiffs further ask the Court to deny Defendants' alternative request for a case

management order that imposes more stringent pleading requirements because such an

extraordinary discovery measure is not warranted under the circumstances of this case.

## DISCUSSION

"Judgment on the pleadings is appropriate where no material issue of fact remains

to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v.*

*Univ. of Minn.*, 304 F .3d 797, 803 (8th Cir. 2002) (citation omitted). When presented

with a motion for judgment on the pleadings, a district court must "accept as true all

factual allegations set out in the complaint" and "construe the complaint in the light most

favorable to the [plaintiff], drawing all inferences in [his] favor." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citation omitted). The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)).

Defendants argue judgment on the pleadings should be granted as Plaintiffs have failed to adequately allege a defect or causation. In a Missouri products liability case, the plaintiff must plead and prove that the product in question was in fact defective, that the defect existed when the product left the manufacturer, and that the defect proximately caused the plaintiff's injuries. *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493 (Mo. Ct. App. 2007), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013). *See also Daniel v. Ind. Mills & Mfg., Inc.*, 103 S.W.3d 302 (Mo. Ct. App. 2003). Products liability actions and negligence actions require a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Strong*, 261 S.W.3d at 506. *See also Nelson v. Am. Home Prod. Corp.*, 92 F. Supp. 2d 954, 957 (W.D. Mo. 2000) ("a submissible case on causation is made where the evidence is susceptible to a reasonable inference that injuries to plaintiff resulted from defendant's product").

Upon review of the petition, Plaintiffs allege that on the night of the incident, each member of the FBI SWAT team carried a weapon with a defective holographic sight that

was designed, manufactured, and sold by Defendants. Plaintiffs specifically describe the defective conditions experienced by the sights as thermal drift and parallax error, which could cause a shooter to "potentially miss a target at which he appeared to be directly aimed." ECF No. 6 at ¶¶13-15. Moreover, Plaintiffs allege that cold temperatures caused the sights to fail and that the SWAT team had waited outside for several hours in freezing temperatures prior to the shooting. Finally, Plaintiffs aver that Agent Ogurek "aimed his defective EOTech sight on [the target] . . . . But the bullet missed . . . and struck Agent Hartman . . . ." *Id.* at ¶29.

Defendants first argue the above allegations are insufficient to adequately plead that Agent Ogurek's sight was defective. In support of their contention that additional factual support is needed, Defendants rely on the following three cases: *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009), and *Thunander v. Uponor, Inc.,* 887 F.Supp. 2d 850 (D. Minn. 2012). To the extent that these three cases stand for a requirement that something more is required in pleading a product defect, the Court finds them inapposite as they are factually distinguishable from the instant action. In *Briehl* and *O'Neil*, the products at issue were only alleged to be "at risk" of a defect. There were no allegations that the products ever manifested the alleged defect, malfunctioned, failed, or injured anyone. In contrast, here, Plaintiffs state the specific manner in which Agent Ogurek's sight was defective and that when he used the sight, it malfunctioned and injured Plaintiff.

In Defendants' Reply to Plaintiffs' Response in Opposition, they urge the Court to follow the reasoning of the third case, *Thunander*, arguing it is similar to the

6

circumstances in this case.  In *Thunander*, the plaintiffs claimed that their home

contained pipe fittings "at risk" for a toxic defect, but offered no plausible facts that the

defect actually existed in the pipes in their home.  *Thunander*, 887 F.Supp. 2d at 862.  In

support of their claim, the plaintiffs relied on the defendants' memo which identified a

specific toxic catalyst used in 2003.  *Id.*  Because the plaintiffs had not alleged this toxic

catalyst was present in their pipes, and as the memo only referred to the use of the

catalyst in 2003 and the plaintiffs' home was built in 2002, the *Thunander* court found

that the plaintiffs had not sufficiently pleaded a defect.  *Id.*  The *Thunander* court

remarked that had the plaintiffs tested the pipes in their home and confirmed the presence

of the toxic defect, they might have pleaded a plausible claim for relief.  *Id.*

The instant case is distinguishable from *Thunander*.  As noted above, Plaintiffs are

not alleging here that Agent Ogurek's sight is merely "at risk" for a defect.   Moreover,

unlike *Thunander*, where the court suggested the plaintiffs should have tested the product

because the toxic catalyst was used after the plaintiffs' home was built, here, the sight in

question was alleged to have malfunctioned in 2014 and Defendants stipulated that they

sold defective sights to the U.S. Government from 2007 to 2014.   At this preliminary

stage of the proceedings, the Court finds Plaintiffs are entitled to a favorable inference

that the sight fell into the defective class.

Defendants additionally argue that Plaintiffs cannot establish the element of

causation based upon the proximity between the agents when the shooting took place.

Specifically, Defendants argue that " in a confined residential basement where the

distance between Agent Ogurek and his target likely was no more than a few feet or

yards, the maximum potential aiming error generated by the defects described in the Settlement would be somewhere between infinitesimal and less than one inch. . . ." ECF No. 17 at 8.

In order to reach this conclusion, Defendants ask the Court to calculate the maximum potential aiming error that could have been generated by the "thermal drift" and "parallax error" defects. To perform this calculation, Defendants urge the Court to take judicial notice of an excerpt from a manual on Firearm Ballistics, attached as Exhibit B.  Defendants acknowledge that this calculation would be affected by various conditions, including temperature.

The Court declines to take judicial notice of Exhibit B–a document that is not contained or referenced in Plaintiffs' petition. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (in ruling a judgment on the pleadings, courts must generally ignore materials outside the pleadings, but they may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record). *See also Victorian v. Wells Fargo Home Mortg.*, No. 4:15-CV-00667-AGF, 2015 WL 5766256, at *2 (E.D. Mo. Sept. 30, 2015).  Moreover, the Court also declines to rely on information not pleaded in the petition, such as the size of the basement, the distance between the shooter and the target, and the temperature. The source of the aiming error is clearly a disputed issue not appropriate for resolution at this early stage of the proceedings, and the Court will not invade what is properly the province of the jury.  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved . . . ." *Faibisch*, 304 F.3d at 803.

All that is required to survive a motion for judgment on the pleadings is that the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Here, construing the petition in a light most favorable to Plaintiffs, the Court finds that facts alleged give rise to a plausible claim that a defect in the EOTech sight caused Plaintiff's injuries.

In the alternative, Defendants ask the Court to issue a case management order requiring Plaintiffs to present evidence of a *prima facie* case of causation before Defendants are required to conduct discovery. Conceding this type of "Lone Pine" order[1] is more commonly issued in mass tort litigation, Defendants ask the Court to follow a case from the Northern District of Ohio, *Miller v.Metrohealth Med. Ctr.*, Nos. 1:13 cv 1465, 1466, 2014 WL 12589121, at *1 (N.D. Ohio Mar. 31, 2014), where a Lone Pine order was issued even though there were only two plaintiffs in the case. In *Miller*, the plaintiffs could not articulate how the medical device at issue was defective and discovery had already been conducted in which expert testimony was produced indicating a physician and hospital negligence had caused the plaintiff's injuries. *Id.* at *2. The *Miller* court concluded a Lone Pine order was warranted as the plaintiffs had not offered any substantive basis for their claims. *Id.* In contrast, here, discovery has not yet been conducted, and Plaintiffs have adequately articulated a defect and pleaded a prima facie case as discussed above. Notably, Defendants' motion fails to cite a single case from this

---

[1] In *Lore v. Lone Pine Corp.*, No.L 33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div., Nov. 18, 1986), the court required the plaintiffs in a mass toxic tort action to make a prima facie showing of exposure and causation before full discovery and other procedures were permitted.

jurisdiction in which a Lone Pine order was issued under similar circumstances. Furthermore, the Court does not find the concerns of complexity, volume, delay and expense ordinarily underlying Lone Pine orders present here, and declines to issue the requested order.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants L-3 Communications EOTech, Inc., and L-3 Technologies, Inc.'s motion for judgment on the pleadings (ECF No. 16) is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 2nd day of October, 2018.